ELIJAH COOPER v. STATE OF MISSISSIPPI.

[42 South. Rep., 601.]

CRIMINAL LAW AND PROCEDURE. *Confessions. Testimony of accused before grand jury.*

Where a prisoner did not voluntarily appear, but was carried before the grand jury, and was examined under oath and testified touching the crime for which he was subsequently indicted, confessions made while so testifying are not admissible in evidence against him on his trial for the crime.

FROM the circuit court of Pike county.

HON. MOYS H. WILKINSON, Judge.

Cooper, the appellant, was indicted and tried for and convicted of the murder of one Giles, and was sentenced to suffer death. From such conviction and sentence he appealed to the supreme court.

The dead body of Giles was found near a railroad track in the village of Fernwood, its condition indicating that death had been caused by violence. The appellant and one Ross, both negroes, were jointly indicted for the crime. A servance was had and appellant tried, the indictment still pending against Ross.

It was shown on the trial that shortly before the body of Giles was found, decedent, appellant and Ross were seen at night near the place where the body was found, walking towards the railroad track. The state's testimony was circumstantial, except that Ross testified to having seen appellant kill Giles. Over the objection of appellant the state was allowed to prove, by the testimony of members of the grand jury which returned the indictment, that appellant had been summoned before the grand jury when investigating the crime and had there confessed to having killed Giles. Defendant, as a witness in his own behalf, denied that he had anything to do or was in any way connected with the killing, but testified that he saw Ross commit the crime. In explanation of the confession before the grand jury he claimed that Ross, after being carried before the grand jury and upon returning to the jail where they were confined under suspicion of having committed the crime, learning that appellant was summoned to appear before that body, influenced appellant by a bribe to state to the grand jury when he should appear before it that he, the appellant, killed Giles; and that immediately afterward he was brought before the grand jury, and there made the confession because Ross had in addition urged upon him that if he, appellant, did not do so, Ross' life would be forfeited, while in no event would appellant's life be in danger. The appellant's testimony to this effect was corroborated by that of another witness for the defense, who was confined in the jail with Ross and appellant at the time the grand jury was investigating the killing, and who further testified that appellant was a very ignorant person, constantly influenced by Ross; and that, immediately before appellant was taken before the grand jury, Ross stated to him that if the confession were made before the grand jury and appellant were indicted and tried for the crime, the punishment could only be a short term in the penitentiary, and that Ross promised appellant, in such event, to promptly secure him a pardon.

The opinion further states the facts.

*Garland Q. Whitfield* and *Robert E. Jackson,* for appellant.

It was error in the court below to admit in evidence, over appellant's objection, proof of his confession made before the grand jury, because the circumstances show it was not freely and voluntarily made. Appellant had been confined in jail with Ross and, although occupying separate cells, they had found opportunity of cummunication. Ross had been before the grand jury, and for his own protection conceived the idea that it would be of profit to him to have appellant confess to having committed the murder. Doubtless Ross had already told the grand jury that appellant did the killing. Appellant was densely ignorant and had great reliance upon Ross' intelligence. It was easy for Ross, himself in dread of the gallows, to urge upon appellant that if appellant would state to the grand jury that he, instead of Ross, did the killing, the result would not be very severe upon appellant, while it would be the means of saving Ross' life. The appellant and a white man named Dees both swore that after Ross returned from the grand jury room, and while temporarily out of his cell and near appellant, he said to appellant, as follows: "I have been over before the grand jury and they are investigating the killing of Giles. Of course you know I killed Giles, but if you will do what I tell you I will give you eighty dollars in weekly payments. You tell the grand jury, when you are before them, that you did the killing, for they already think you did it anyhow. You are aware that I know better than you what is best to do, so for our protection you must say you killed Giles. By your telling them that they will only send you to the penitentiary, and not hang you; and if you go to the penitentiary you will get the eighty dollars which I will send you, and I will promptly get you a pardon."

Can a confession under such circumstances, made by an ignorant negro under suspicion of a great crime, when in mental agony and persuaded by what his false friend told him, in an enlightened tribunal be held to be free and voluntary? It

is a prerequisite to the admissibility of a confession in a criminal case that no wrongful influences occasioned it.

Greenleaf in his work on Evidence (15th ed., sec. 219), states that before any confession can be received in evidence in a criminal case, it must be shown that it was voluntary; and that the usual course of practice is to inquire of the witness whether the prisoner had been told that it would be better for him to confess, or worse for him if he did not confess, or whether language to such effect had been addressed to him. Even if we disbelieve that appellant was given the above information by Ross, it would seem that for a person of low intelligence, such as was appellant, to be hauled before a grand jury while himself under arrest and by common report charged with murder, and interrogated in the method shown in evidence, with constant hints from his interrogators that led him to believe that they knew all about him and that it was to his interest to admit that he did the killing, would render the confession incompetent.

See *People* v. *Mondon,* 103 N. Y., 214, where the question of competency of the prisoner's prior confession was before the court, and where the court stated as follows: "It thus appears that when the prisoner was called upon to make his statements on oath before the coroner he stood in the attitude of an accused person, and was required to answer for himself, as a party, and not as a mere witness to aid the coroner in investigating the cause of the death of the deceased." And in *State* v. *Garvey,* 25 La. Ann., 191, it is declared by the Louisiana court that "a clear and well marked distinction is made between the effect of statements made by a party under oath as a witness in a criminal proceeding and the statements under oath made by an accused party." This is apparent, for whatever the witness, viewed merely as a witness, may state tending to incriminate himself in regard to the matter of which he testifies, may be introduced as evidence against him in a subsequent prosecution of himself for the offense under consideration. But it seems well settled that the declarations of an accused party under oath are not to be

held voluntary, and consequently are not admissible in evidence. Under prior decisions of our own court the confession must be held inadmissible in evidence. When the alleged statements were made before the grand jury, appellant was in custody on the charge of committing the very crime for which the grand jury indicted him, and it is not to be denied that the evidence shows he was induced to make such statements by precedent undue influence. *Josephine v. State,* 39 Miss., 650; *Jackson v. State,* 56 Miss., 312.

The question here involved is similar to that discussed in *Farkas v. State,* 60 Miss., 847, *where* CAMPBELL, C. J., said: "It was erroneous to admit in evidence the testimony given by the appellant as a witness before the coroner's inquest. He was then a prisoner charged, not formally but in fact, with the crime of the murder of his wife, whose death was the subject of inquisition, and it is deducible from all of the authorities that it was not admissible afterwards to give in evidence against him on his trial for the crime the evidence given by him as a witness sworn before the inquest. *Josephine v. State,* 39 Miss., 650; *Jackson v. State,* 56 Miss., 312; *Hendrickson v. People,* 10 N. Y., 13; *McMahon v. People,* 15 N. Y., 7; Archb. Cr. Pl. & Pr., 126, note 2, and cases there reviewed." And to these authorities cited by this learned jurist we would respectfully add the cases of *Jordan v. State,* 32 Miss., 382, and *Simmons v. State,* 61 Miss., 243, the opinion in the latter case being rendered by Judge CAMPBELL.

In *Jones v. State,* 58 Miss., 349, GEORGE, J., recognizing the principle for which we contend, said: "The inducements held out by private persons, who have interfered without any kind of authority and promised without means of performance, are not presumed to have effect to induce a false confession. But they may have such effect, owing to the position of the person holding out the inducements or owing to the weakness of the prisoner. In cases of confessions made to such persons, the

question of their freedom or the contrary is a mixed question of law and fact, and should be submitted to the judge. He should admit or exclude them according as he shall determine from all the circumstances of the case that they were voluntary or that the inducements held out were sufficient to overcome the mind of the prisoner." And to the same effect are the cases of *State* v. *Smith,* 72 Miss., 423 (s.c., 18 South. Rep., 482); *Hunter* v. *State,* 74 Miss., 519 (s.c., 21 South. Rep., 305); *Ford* v. *State,* 75 Miss., 104 (bottom) (s.c., 21 South. Rep., 524); *Hamilton* v. *State,* 77 Miss., 675 (s.c., 27 South. Rep., 606), and *Blalack* v. *State,* 79 Miss., 517 (s.c., 31 South. Rep., 105). See, also, *Bram* v. *United States,* 168 U. S., 574.

We refer to the admirable opinion of Justice Calhoon in *Ammons* v. *State,* 80 Miss., 592, the "Sweat Box Case," every line of which opinion breathes, as it should, righteous indignation. And while we are aware that such barbaric and, in our advance state of civilization, unthinkable methods were employed to extort the confession from the appellant, Cooper, as were employed against Ammons, yet the circumstances of this case render the appellant's confession as truly involuntary as was the confession of Ammons; and furthermore in this case the confession of the appellant was untrue.

The case of *Steel* v. *State,* 76 Miss., 393 (s.c., 24 South. Rep., 910), cited by counsel for the state, does not apply to this case, for the appellant is shown to have gone before the grand jury, not voluntarily, but because he was summoned and taken to the grand jury room by the deputy sheriff.

*R. V. Fletcher,* assistant attorney-general, for the state.

It appears that the appellant was brought before the grand jury before any indictment was found against him, and that he there made a confession that he killed Giles; that at the time of such crime Giles was doing nothing to him; that he and Giles were merely walking along quarreling with each other. And on the trial appellant did not deny that such confession

was made, but sought in explanation to show that it was not voluntary. There was some question as to how appellant happened to be before the grand jury. If he voluntarily appeared before that body and made the statements, even though summoned, the case of *Steele* v. *State,* 76 Miss., 393 (s.c., 24 South. Rep., 910), should govern and affirm this case. In the case cited the defendant, Steele, made a confession before the coroner at the inquest. This court said: "There is nothing to show that the defendants did not voluntarily offer themselves before the coroner and the magistrate, voluntarily assuming the character of witnesses in their own behalf. In the absence of such showing, the presumption is that the magistrate and the coroner proceeded in their examination legally." And see also *Wright* v. *State,* 50 Miss., 332.

The announcement of the law in the above two cases should determine the decision in this case. Here the defendant was, according to his testimony on the trial, persuaded and paid before confession to make the statements he did to the grand jury. He must have been convinced that the best course for him to pursue was to tell the story he did. What more natural inference than that he voluntarily appeared, though summoned, and voluntarily testified? At any rate, there is absolutely nothing in the record to rebut the presumption that the grand jury and the district attorney, who was present, did their duty in receiving the voluntary statement of the defendant. It may be argued that the defendant should have been cautioned as to his legal right to refuse to answer certain questions. But the obvious reply is that there is nothing in the record to show that this was not done, and the state's side of the case is thus again aided by the presumption that such precautionary words were spoken. The same presumption is sufficient to keep the statement from being condemned on the ground that it might have been induced by threats or promises made in the grand jury room.

If reliance be placed by counsel for the defendant on *Jackson* v. *State,* 56 Miss., 312, and *Farkas* v. *State,* 60 Miss., 848, and prior authorities upon which these cases rest, we say that the opinion in the *Steele· case, supra,* clearly points out that the doctrine enunciated in the former cases has become obsolete since the enactment of Code 1892, § 1741, permitting a defendant to testify in his own behalf.

For a discussion of statements and confessions not voluntarily made see 1 Wigmore on Evidence, pp. 961 *et seq.* It is impossible to condense the fine argument of this great writer or to give short abstract of his condensed and admirable reasoning. Suffice it to say that it is an unanswerable reply to much of the illogical reasoning of many of the adjudicated cases of former years, based as they were upon misconception of the underlying. principle governing the admission of confessions.

CALHOON, J., delivered the opinion of the court.

It was error to permit the testimony of what the accused said as a witness under oath before the grand jury. He was then in custody on the charge of committing the very crime for which that grand jury indicted him, and there is evidence in the record that he was induced to make the statement by precedent undue influence. This state is thoroughly committed to the doctrine of its nonadmissibility. *Josephine* v. *State,* 39 Miss., 650; *Jackson* v. *State,* 56 Miss., 312; *Farkas* v. *State,* 60 Miss., 848; *Ford* v. *State,* 75 Miss., 104 (at bottom) (s.c., 21 South. Rep., 524).

.We do not want to be understood as in any degree differing from *Steel* v. *State,* 76 Miss., 393 (s.c., 24 South. Rep., 910). In the case now in hand it sufficiently appears from the circumstances that appellant did not voluntarily go before the grand jury and deliver the oath. We decide no other question.

*Reversed and remanded.*